**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**WILLIAM R. MEYERS III,**

      **Petitioner,**

**vs.**                                 **Case No. 4:11cv122-MP/CAS**

**MICHAEL D. CREWS, Secretary,
Florida Department of Corrections,**[1]

      **Respondent.**

_____/


## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

Petitioner William R. Meyers III, proceeding pro se, filed a 28 U.S.C. § 2254

petition on March 22, 2011. Doc. 1. On April 5, 2012, Respondent filed a response,

with exhibits filed the following day. Docs. 25 (response), 26 (exhibits). Petitioner has

not filed a reply to the response, although given opportunities to do so. *See* Docs. 23,

30, 32.

---

[1] The Clerk of Court shall substitute Michael D. Crews as Secretary of the Florida Department of Corrections in place of Kenneth Tucker. Michael Crews became Secretary on December 17, 2012, and shall be automatically substituted pursuant to Federal Rule of Civil Procedure 25(d).

On August 12, 2013, Petitioner filed a "Motion for Clarification" concerning his § 2254 petition, noting that the petition has been pending for several months (Doc. 48), as well as a copy of a petition for writ of mandamus he had filed in the Eleventh Circuit Court of Appeals, which was docketed as a motion to expedite (Doc. 49). On August 26, 2013, Petitioner filed a Letter of Inquiry, requesting the status of his motion for clarification. Doc. 50.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration of all issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this matter. *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts. For the reasons stated herein, the pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief, and the § 2254 petition should be denied.

## Procedural History

By information filed March 10, 2006, in case number 06CF660, the State of Florida charged Petitioner with two counts involving the same victim, Jeffery Moore, in connection with events that took place on February 19, 2006, in Leon County, Florida: (1) armed robbery with a deadly weapon, a first degree felony in violation of section 812.13(2)(a), Florida Statutes; and (2) aggravated battery with a deadly weapon, a second degree felony in violation of section 784.045(1)(a)2., Florida Statutes. Doc. 26 at 1. The Office of the Public Defender was appointed to represent Petitioner. *Id*. at 8. Trial was set for July 24, 2006. *Id*. at 9.

On May 10, 2006, Petitioner filed a pro se motion to dismiss, which was dated April 20, 2006. *Id*. at 11-17. In support of his motion, Petitioner attached an affidavit from Moore stating that he wished to drop the charges against Petitioner. *Id*. at 15. The state trial court entered an order on May 10, 2006, striking the pro se motion as unauthorized because Petitioner was represented by the Public Defender's Office. *Id*. at 18.

On July 21, 2006, the Office of the Public Defender requested appointment of conflict counsel. *Id*. at 30. By order dated July 24, 2006, the state trial court granted the request and appointed attorney James Banks to represent Petitioner. *Id*. at 31. The court amended the order on August 9, 2006, finding the first appointed counsel also had a conflict of interest and appointing instead attorney Frank Sheffield. *Id*. at 33.

The jury trial took place on November 15, 2006. *Id*. Ex. B (trial transcript). The victim, Jeffery Moore, testified. *Id*. at 26-46. Officers with the Tallahassee Police Department also testified. *Id*. at 46-59 (Officer William Faust), 59-77 (Officer Brianne Shaut), 77-89 (Officer Susan Burton Newhouse). After the State rested, defense counsel moved for judgment of acquittal. *Id*. at 90-92. The trial court denied the motion. *Id*. at 92. Petitioner did not testify, and the defense presented no witnesses or evidence. *Id*. at 93-94. The jury returned a verdict finding Petitioner guilty as charged on both counts. *Id*. at 148; *see id.* Ex. A at 64-65. The state trial court adjudicated Petitioner guilty and sentenced him to 120 months in prison on the robbery charge and 48 months in prison on the aggravated battery charge, to run concurrently. *Id*. Ex. B at 153; *see id.* Ex. A at 68-77.

Meyers appealed his judgment and sentence to the First District Court of Appeal (DCA), assigned case number 1D06-6197. *See id*. Ex. A at 79. Appointed appellate counsel filed a brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967). *Id*. Ex. D. The First DCA per curiam affirmed the case without an opinion. *See id.* Ex. E; <u>Meyers v. State</u>, 993 So. 2d 520 (Fla. 1st DCA 2008) (table). Meyers filed a pro se motion for rehearing, which the First DCA denied by order dated December 17, 2008. Doc. 26 Exs. F (motion), G (order). The First DCA issued the mandate on January 6, 2009. *Id*. Ex. H.

On January 10, 2009, Meyers filed a pro se motion for post-conviction relief in the state trial court, pursuant to Florida Rule of Criminal Procedure 3.850, raising three claims of ineffective assistance of counsel (IAC): (1) IAC for failing to file notice of expiration of speedy trial period despite Petitioner's request that he do so; (2) IAC for failing to object to improper comments by the prosecutor at trial; and (3) IAC at sentencing for failing to investigate and present mitigating evidence. Doc. 26 Ex. I at 1-14. By order dated July 17, 2009, the state post-conviction trial court, Circuit Judge Mark E. Walker, directed the Office of the State Attorney to file a response to Meyers' Rule 3.850 motion. *Id*. at 19. The State responded, denying the claims and requesting an evidentiary hearing. *Id*. at 21. Petitioner filed a motion requesting appointment of counsel for the Rule 3.850 motion and evidentiary hearing, which the state post-conviction trial court denied. *Id*. 23-24 (motion), 25 (order denying motion).

On May 28, 2010, Judge Walker held an evidentiary hearing on Meyers' Rule 3.850 motion. *Id*. Ex. J (hearing transcript). At the hearing, Petitioner again requested

appointment of counsel.  *Id*. at 4.  Petitioner explained, "I am a layman to the law and I

don't have a license to practice the law in Florida."  *Id*. at 5.  The judge denied the

motion:

> Again as I stated previously on the record there's no entitlement to court
> appointed counsel in such a collateral matter unless I deem it.  Giving the
> nature of the matter and the allegations and so forth the complexity of the
> issues or the limited skills of the person appearing in front of me.  By
> limited skills I mean, sir, if you couldn't read or write and so forth there
> may be other issues for me to consider.  But based on all the
> circumstances that I'm to consider I find that there's no legal basis to
> compel me to and I choose not to exercise my discretion to appoint
> counsel.  But your request and your objection to my denial is noted for the
> record.

*Id*.  Frank Sheffield, who by that point was a circuit judge, testified at the hearing, and

Petitioner asked him questions on cross-examination.  *Id*. at 7-28 (direct), 29-55 (cross-

examination).  Petitioner offered into evidence letters he had written to and received

from Mr. Sheffield during the course of his representation; the court admitted the letters

into evidence.  *Id*. at 33-34; see id. Ex. K.  Petitioner also offered into evidence medical

records and documents, which the court admitted.  *Id*. Ex. J at 34.  Near the conclusion

of the hearing, Judge Walker summarized the parties' positions:

> THE COURT: . . . Mr. Evans I understand your argument that not only is
> there no deficient performance that there's even if there was no prejudice
> as to any of these three grounds.  In fact implicit in your questions is Mr.
> Sheffield would have been deficient had he gone ahead with speedy trial
> or had he forced the issue at sentencing.  And I understand based on
> your questions and your arguments.  Do you wish to add anything further?
>
> MR. EVANS: No, you understand what my argument is going to be.
>
> THE COURT: All right.  Mr. Myers [sic], I understand from you that your
> argument is, Judge, we should have pushed the speedy trial, shouldn't
> have gotten the State and should have tried to catch the State without a

victim.  And if we had pursued that even without all the other evidence we could have caught the case the State without the victim testifying and we could have won.  Is that your argument as to Ground 1?

THE DEFENDANT: Yes, sir.

THE COURT: As to Ground 2 your argument is Judge, Mr. Sheffield should have objected to improper arguments.  If he had have done so he could have argued for a mistrial and I could have gotten another trial and the jury was tainted by those improper comments by the prosecutor, you preferenced [sic] earlier.  Is that Ground 2?

THE DEFENDANT: Yes, sir.

THE COURT: And Ground 3 is, Judge, I got the bottom of the guidelines was a little less than six years.  I go ten years.  I could have gotten less of a sentence if Mr. Sheffield has presented evidence of my medical conditions at sentencing.  Is that sum up accurate your Ground 3?  Does that sum up Ground 3 sir?

THE DEFENDANT: Yes, sir.

THE COURT: Okay.  Is there anything you'd like to – I mean you wrote a cogent easily understandable –

THE DEFENDANT: No, I haven't wrote anything else, sir.

THE COURT: I meant, your motion was easy to follow believe me.  There are motions written by pro se litigants and quite frankly motions written by lawyers that I find it hard to follow.  But I could clearly follow your motion in the three arguments that you were making both through your questioning, implicit in your questions as well as your statements to Mr. Sheffield.  I've also have the benefit of not only have both sides referenced certain portions of the transcripts I've had the benefit of reviewing the statements at issue.  And based on the arguments your presented, Mr. Myers [sic], as well as those by Mr. Evans and the testimony of Mr. Sheffield I think I have in my review of the court file for example the sentence and so forth I think I have a command of the facts of the case.  Mr. Evans has rested on the record as it stands.  Is there anything that me having summarized your arguments to make sure that I understood your arguments is there anything additional you'd like to add by way of argument?

THE DEFENDANT: No, sir.  I rest.

*Id*. at 56-58.  The judge then ruled on the record, making findings and concluding there was no deficient performance and no prejudice.  *Id*. at 58-64.  Judge Walker entered a written order on June 1, 2010, nunc pro tunc May 28, 2010, consistent with the oral pronouncement, denying the Rule 3.850 motion.  *Id*. Ex. I at 27.

Meyers appealed to the First DCA, assigned case number 1D10-3313.  *See* Doc. 26 Ex. L (Initial Brief).  Meyer raised one point: "The order in this case denying the Appellant's Motion for Post-Conviction Relief is inadequate to allow for meaningful appellate review."  *Id*. at i; *see id.* at 3-5.  On December 15, 2010, the First DCA per curiam opinion affirmed the appeal without an opinion.  *Id*. Ex. M; *see* <u>Meyers v. State</u>, 50 So. 3d 1140 (Fla. 1st DCA 2010) (table).  Meyers filed a motion seeking an extension of time to file a motion for rehearing and a motion for rehearing.  Doc. 26 Exs. O, P.  The First DCA denied both motions.  *Id*. Exs. Q, R.  The mandate issued on January 28, 2011.  *Id*. Ex. N.

As indicated above, on March 22, 2011, Meyers filed a § 2254 petition in this Court.  Doc. 1.  Respondent filed a response and with exhibits.  Docs. 25, 26.  Meyers has not filed a reply, although given opportunities to do so.  *See* Docs. 23, 30, 32. Meyers has filed a "Motion for Clarification" concerning his § 2254 petition, noting that the petition has been pending for several months (Doc. 48), as well as a copy of a petition for writ of mandamus he had filed in the Eleventh Circuit Court of Appeals, which was docketed as a motion to expedite (Doc. 49).  Meyers has also filed a Letter of Inquiry, requesting the status of his motion for clarification.  Doc. 50.

## <u>Analysis</u>

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective

Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for

persons in state custody.  Section 2254(d) provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).  *See* <u>Williams v. Taylor</u>, 529 U.S. 362 (2000); <u>Gill v. Mecusker</u>,

633 F.3d 1272 (11th Cir. 2011).

In this case, in his § 2254 petition, Meyers raises three grounds alleging IAC:

> (1) Trial counsel failed in his duty to uphold the Fourteenth Amendment by
> failing to file a notice of expiration of the speedy trial period after Meyers
> requested him to do so, Doc. 1 at 4;
>
> (2) Trial counsel was ineffective and failed in his duty to uphold the Fifth
> and Sixth Amendments by failing to make a timely object to improper
> arguments made by the prosecutor during trial, Doc. 1 at 4;
>
> (3) Trial counsel failed in his duty to uphold the Fifth and Sixth
> Amendments because counsel was ineffective at sentencing for failing to
> investigate and present mitigating evidence regarding Meyers' diabetes
> and bipolar condition, Doc. 1 at 8 (ECF page number).

Respondent asserts that Meyers has not properly exhausted these claims because, in

his appeal from the denial of his Rule 3.850 motion, Meyers did not challenge the

merits of the post-conviction trial court's findings and conclusions; rather, Meyers

argued only that the post-conviction trial court erred in failing to make written findings of

fact and conclusions of law.  Doc. 25 at 11.  Respondent then addresses the merits of

Meyers' claims.  *Id*. at 12, 17-19.

Meyers' grounds allege IAC.  In <u>Strickland</u>, the U.S. Supreme Court adopted a

two-part test for such claims:

> First, the defendant must show that counsel's performance was deficient.
> This requires showing that counsel made errors so serious that counsel
> was not functioning as the "counsel" guaranteed the defendant by the
> Sixth Amendment.  Second, the defendant must show that the deficient
> performance prejudiced the defense.  This requires showing that
> counsel's errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

466 U.S. at 687.  To demonstrate ineffectiveness, a "defendant must show that

counsel's performance fell below an objective standard of reasonableness." *Id.* at 688.

To demonstrate prejudice, a defendant "must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Id.* at 694.  "A reasonable probability is a probability

sufficient to undermine confidence in the outcome." *Id.*

If a state prisoner's habeas petition "includes a claim that has been 'adjudicated

on the merits in State court proceedings,' § 2254(d), an additional restriction applies."

<u>Cullen v. Pinholster</u>, 131 S.Ct. 1388, 1398 (2011).  The federal court may not grant

relief unless the state court's adjudication of the claim:  (1) resulted in a decision that

was contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States; or (2) resulted in a

decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).   "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'"  Cullen, 131 S.Ct. at 1398 (quoting Harrington v. Richter, 131 S.Ct. 770, 786 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).  This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  Cullen, 131 S.Ct. at 1388.

For this Court's purposes, importantly, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'"  Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schiro v. Landrigan, 550 U.S. 465, 473 (2007)).  "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  Id.  It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard."  Id.

### Ground 1:  IAC – Speedy Trial

In his first ground, Petitioner Meyers claims his trial counsel rendered ineffective assistance by failing to file a notice of the expiration of the speedy trial period and a motion to discharge on that basis, after Meyers asked him to do so.  Doc. 1 at 4.  Meyers raised this claim in his state Rule 3.850 motion and the state post-conviction

trial court denied it after holding an evidentiary hearing.  In particular, the state post-

conviction trial court judge ruled on the record:

> While I understand Mr. Myers [sic] and appreciate your reference to the speedy trial I cannot tell you how – I think it is the most misconstrued rule of procedure in terms of lay people.  It appears that on one had [sic] most people believe that it's sort of something magic that at 175 day passes and you haven't been brought to trial you're automatically discharged.  You've recognized that's not the case because you recognized because there was a recapture period.
>
> Also equally misconstrued in terms of the rule is the notion that the defendant regardless of the decision made by the – a professional view of the lawyer the defendant controls the decision of when you go to trial not the lawyer.  That is not what the rule itself says.  More importantly as recently as last year the first DCA has ruled that when the defendant says that judge I want my trial now and the lawyer says well judge I'm not ready but I'll do what my client wants.  The first DCA overruled – reversed the case and reversed the judge saying it's not up to the defendant.  The second the lawyer said I need more time to prepare.  It was the lawyers obligation to move to continue and not just say I'll do whatever my client wants.
>
> In this case I find not only is Mr. Sheffield's testimony credible, it's entirely consistent with the record.  I find that there is absolutely no deficient performance and refusing the demand for speedy trial but to prepare for trial, to the contrary.  I find the opposite.  If mr [sic] Sheffield had of [sic] just gone forward like a bull in a china shop and gone forward with taking depositions, without preparing for trial.  That arguably would have been a deficient performance.  So I find there is no deficient performance.
>
> Moreover, I find that even if there had been, which there isn't, under any legal theory deficient performance there's clearly no prejudice.  The victim was available.  The victim could be called.  There was nothing – this was not a case where the State had no idea what the case was about.  The defense had all kinds of witness [sic] it could bring to refute the State so it would sort have been a gotcha to the State.  That's not what the evidence revealed.  So even if there had been, even if there was some requirement that Mr. Sheffield do exactly what you say, which that's not the law, there would clearly be no prejudice.  I find it would only have been prejudice if Mr. Sheffield had done what you asked which is forced the case forward.

Doc. 26 Ex. J at 58-60.  In the written order, the judge denied the Rule 3.850 motion for the reasons stated on the record.  *Id*. Ex. I at 27.

Assuming Meyers properly exhausted this claim, the state courts' rulings are entitled to deference and review is limited to the record before the state court.  *See* Cullen, 131 S.Ct. at 1388.  The testimony of Frank Sheffield, found credible by the state post-conviction trial court, supports the state courts' determinations.

In particular, Mr. Sheffield testified he was appointed to represent Meyers on August 6, 2006, and the case was not ready to go to trial at that point.  Doc. 16 Ex. J at 10.  Sheffield explained that Meyers was charged with a felony punishable by life and discovery was incomplete: "no deposition has been taken and nothing had been done to actually prepare the case for trial itself."  *Id*.  Sheffield testified that a hearing took place on August 22, 2006, and the trial was set for November 13, 2006.  *Id*. at 11.  He prepared for trial between August and November, and the case did go to trial in November.  *Id*. at 11-13.  Sheffield testified that, at the time he received the case, on August 6, 2006, there were only four (4) days remaining in the speedy trial period.  *Id*. at 14.  Sheffield testified he never sought to continue the trial, he prepared for it, and tried it in mid-November.  *Id*. at 14-15.  Sheffield testified that Meyers asked him to file a demand for a speedy trial or notice of expiration of the speedy trial period, but Sheffield responded to Meyers that he was not going to do that because it would result in him going to trial unprepared:

> . . . I told him when I first undertook to represent him that he'd have to get somebody else appointed because I was not going to go to trial unprepared nor – I sent him a letter that quoted the rule.  It says rule

3.191 governing speedy trial. It says a person charged with a felony must be brought to trial within 175 days from arrest. If not, defendant can file a notice of expiration. The court then sets it for hearing within five days. The case is then set for trial within 10 days. By the time I was appointed to represent you it was 171 days. Been in jail for 171 days therefore, I had the case for four days at the time he wanted me to file a demand for speedy trial. The rule in Section G states counsel shall only file a demand for speedy trial after he has "diligently investigated the case and is prepared or will be prepared for trial within five days." The rule goes on to say that a person is bound by their demand. A delay or continuance will not be granted after the demand is filed. A demand that is filed in a case that has not been diligently investigated shall be stricken as invalid. This rule is directed to judgment by counsel for the defendant and not the defendant.

And I made the decision that I could not represent that the case had been properly investigated and diligently investigated and that I was not prepared to go to trial and I was not prepared to waive the right to do all that within four days of me being appointed. And that's exactly what I told Mr. Meyers. . . .

*Id*. at 16-17.

The record thus supports the post-conviction trial court judge's determination that

Meyers had shown neither deficient performance nor prejudice. Under Florida law,

defense counsel could not have demanded a speedy trial until he had investigated and

completed discovery. *See, e.g.*, Landry v. State, 666 So. 2d 121, 125 (Fla. 1995)

(explaining that Rule 3.191 "is designed to ensure that an accused cannot control the

court's docket by filing spurious demands for a speedy trial for which the accused is not

prepared"); San Martin v. Menendez, 467 So. 2d 1035, 1037 (Fla. 2d DCA 1985)

(explaining that at time defendant filed speedy trial motion, "he was still engaged in

discovery and preparation for trial and his demand, therefore, was not proper and was

correctly struck upon motion by the state"). Nothing indicates the state courts'

adjudication of this claim resulted in a decision that was either (1) contrary to, or

involved an unreasonable application of, clearly established U.S. Supreme Court

precedent, or (2) based on an unreasonable determination of the facts in light of the

evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). This

ground should be denied.

## <u>Ground 2</u>: IAC – Prosecutor's Comments

In his second ground, Meyers claims his trial counsel rendered ineffective

assistance by failing to object to allegedly improper comments by the prosecutor during

his closing argument at trial. Doc. 1 at 4. Meyers raised this claim in his state Rule

3.850 motion and the state post-conviction trial court denied it after holding an

evidentiary hearing. In particular, the state post-conviction trial court judge ruled on the

record:

> As to Ground 2 the statements at issue were a fair – regarding the witnesses who were present at the park was a fair comment when you review the transcript as a whole on the evidence, even some of the lines that you cited so it was not objectionable. Moreover the statements made about the victim this is not a case where the prosecutor said, this is a swearing contest between the victim and the defendant. You know if you believe the defendant then find him not guilty, is forth. That would be a shifting of the burden. That's not what happened here. This was fair comment, fair argument by the prosecutor and quite frankly was responsive to the Defense argument which is the victim was lying. And so there's no impermissible shift of the burden.

> So in either case where the statements – and none of these types of statements were objectionable in the closing argument of the prosecutor. Moreover even if they had been objectionable the decision in light of the state of the record, that is, that there was no weapon, there was no glass, there was no blood, there was no evidence of a fight. The fact that through the depositions by dragging the case out Mr. Sheffield was able to get one of the officers to concede that the injuries of the victim were inconsistent with his story.

It was clearly an appropriate tactical decision not to highlight, a) testimony during closing argument with the prosecutor and, b) create the potential view of the jury that there was – the Defense was trying to hide something. The defense was you're innocent. You did nothing and the State had no evidence – their evidence was weak and the physical evidence was entirely inconsistent with the State's theory of the case.

So, a) there was no deficient performance, b) – I mean, it was nothing objectionable, b) it was a tactical decision. Moreover given the totality of the record the statement that the only witness present in the park was an accurate statement or consistent with the testimony rather so there could be no prejudice from that argument in closing because that's what the evidence was. So I find no prejudice.

Doc. 26 Ex. J at 60-62. In the written order, the judge denied the Rule 3.850 motion for the reasons stated on the record. *Id*. Ex. I at 27.

Assuming Meyers properly exhausted this claim, the state courts' rulings are entitled to deference and review is limited to the record before the state court. *See* Cullen, 131 S.Ct. at 1388. Similar to Ground 1, the testimony of Frank Sheffield, found credible by the state post-conviction trial court, supports the state courts' determinations with regard to this ground.

In particular, Mr. Sheffield testified:

Q Mr. Webster [the prosecutor] made several comments to the, quote, and I'm reading from Mr. Myers [sic] Ground 2 of his motion, "prosecutor made several comments during closing arguments that testimony was heard that the defendant and the victim was the only people at the park during the time of the alleged crime." And he refers to transcript pages 105, 109 and 127. I'll ask you to take a look on – do you have a copy of the transcript?

A I do.

Q Take a look on page 34 of the trial transcript. It's part of Mr. Moore's testimony during the trial. And I'll refer you down to line 17.

A Okay.

Q Could you read for us through lines 22 please, sir.

A All right. We were asking questions about who all was present – or Mr. Webster was – who all was present and at line 12 he said[:]

> At that point the two of you remained in the van or did you get outside the van? The answer was no, we stood outside and leaned up against the side of the van went drinking our drink and smoking cigarettes and talking. Okay. Approximately did you see anybody else around you in the park that morning? Answer, no, sir. Okay was there anybody other than the two of you? Anybody close to you or in close proximity? No, sir.

Q Now looking at page 105 of the transcript. I believe this is the closing of Mr. Webster.

A Okay.

Q And I believe the issue is defendant takes (inaudible) with probably begins on line 9 of that.

A All right.

Q Where Mr. Webster indicated referring to Mr. Moore that he testified that no one else was at Lake Ella that morning. No one else anywhere near the parking lot. And also on page 109 on line 11. Mr. Moore was adamant that there was no one else in Lake Ella that night or that morning rather. No one else was in the park. No one else was round him, no one else was around him when he came to. And on page 127. And I'm assuming that he's talking along 18 and line 20 specifically is there was nobody else that came along and took the money. No one else hit the victim. Those effects. Did you see anything – given the testimony in the case did you see anything improper about those arguments?

A I didn't see anything improper about those arguments. And I didn't want to get up and interrupt Mr. Webster during his closing because at that point in time based upon the evidence that was presented Mr. Myers [sic] and I both felt that the jury was going to acquit him because there was no weapon found, no blood found, no glass shards found, no area of a skirmish found. He was never seen by Mr. Moore as actually hitting him or taking the money. He was caught a little while later in his van. There was no blood in his van. There was no blood on him. There was no weapon that was found. And I got the main police officer to admit on the

witness stand that the injuries sustained by Mr. Moore wee more consistent with someone that had tripped and fallen down and had hurt himself with contact with something that was abrasive rather than blunt force trauma.  So we felt that we had the jury in a position to find him not guilty.  And from that evidence and reading the transcript today I think they should have found him not guilty.  But I was not going to get up and interrupt Mr. Webster and make us look like we were trying to hide something or the bad guys.  It was a judgment call, one and two, it wasn't objectionable to begin with.

Q Now did you feel that the arguments that Mr. Myers [sic] refers to on page 105, 109, 110, 123, 124, and 131 that the victim was the – in basic was the sole witness in this case as to what occurred or didn't occur and that it was his testimony that the jury was going to have to use to either convict or acquit Mr. Myers [sic]?

A I think that's correct.  There was no other witness that was available as to the incident itself.  The police officers came in and testified as to their investigation.  And the only other thing that they had is there was an alleged admission against interest made by Mr. Myers [sic] when they stopped him where they were asking him what happened and he blurted out I didn't hit anybody with a bottle and they hadn't even told him that.  So that piece of evidence from him, making him kind of a witness against himself and the testimony from the victim was really the only testimony regarding the incident.

Q And did you feel that the arguments that were made by Mr. Webster were in any way impermissibly shifting the burden?

A I did not.

Q So you didn't make an objection, is that correct?

A I did not.  I did not think that what he was doing was objectionable.  And I didn't think it was a prudent thing to do at that time because from a factual standpoint we had everything in the record we needed.  As a matter of fact I even managed to get Judge Hood to give the jury the circumstantial evidence instruction because of the state of he evidence that had been deleted from the jury instructions for years.

Doc. 26 Ex. J at 17-21.  *See id.* Ex. B at 34-38 (trial testimony of victim Moore that no

one else was around when incident occurred in which he was struck on the head, heard

glass breaking, lost consciousness, and, after regaining consciousness, realized his money, $132.00 in cash, was missing) and 104-05 (prosecutor's closing: "Ladies and gentlemen, in this case, we have the testimony of the victim, Jeffrey Moore. And the State is calling upon you to rely on that primarily for the proof of this case. Now, the question before you is do you believe that Mr. Moore was telling the truth or not today. . . ."), 109 (prosecutor's closing: "We don't have to prove 100 percent. We talked about that in jury selection. It's beyond a reasonable doubt. If you believe Mr. Moore is telling the truth, is there any reasonable doubt as to who committed the offense? The State would submit that there isn't. Mr. Moore was adamant there was nobody else in Lake Ella that night – or that morning, rather. Nobody else was in the park. Nobody else was around him."), 110 (prosecutor's closing: "If you believe the victim, then you must believe he was hit with a bottle, you must believe that his money was taken, and you must believe that the defendant did it."), 123-24 (prosecutor's closing: "Now, when it comes to reasonable doubt, the State would argue that there's only one question you really need to ask yourself: Do you believe the victim in this case? . . . Well, if you believe the victim, if you believe he was struck across the back of the head with a bottle, if you believe him, that he's telling the truth in that regard, and you have to ask yourself, then who did it if it wasn't the defendant. Who else was there. . . . No, the only question for you is do you believe the victim in this case. And it really is that simple."), 131 (prosecutor's closing: "If you believe the victim in this case is telling the truth, then there's only one lawful verdict you can return. And that's a verdict of guilty as charged.").

The record thus supports the post-conviction trial court judge's determination that Meyers had shown neither deficient performance nor prejudice. Nothing indicates the state courts' adjudication of this claim resulted in a decision that was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). This ground should be denied.

## Ground 3: IAC – Mitigating Evidence for Sentencing

In his third ground, Meyers claims his trial counsel rendered ineffective assistance by failing to investigate and present mitigating evidence at sentencing, regarding his diabetes and bipolar conditions. Doc. 1 at 8. Meyers raised this claim in his state Rule 3.850 motion and the state post-conviction trial court denied it after holding an evidentiary hearing. In particular, the state post-conviction trial court judge ruled on the record:

> As to Issue 3 like Issue 1, first of all there's no requirement – in fact the law, you were not entitled to a PSI. I find Mr. Sheffield's testimony to be credible that he was not aware of the diabetes or the bi-polar. In fact the records that you brought before the Court are from 2009 and given the voluminous exchanges between you and Mr. Sheffield the fact that there was all this information that went back and forth between you in the letters is that has now been admitted into evidence and are part of this record is entirely consistent with what Mr. Sheffield has said which is it was never mentioned. It was never mentioned in the letters, moreover, at sentencing itself on the record it was never mentioned.
>
> So I find no only is Mr. Sheffield's testimony credible it's entirely consistent with both the written record that's before us by way of transcript as well as the written record in the form of the exhibits that were introduced namely, the voluminous exchanges between Mr. Sheffield and

Mr. Myers.  So Mr. Sheffield did not – it would have been pointless for him to insist on a PSI and he could not introduce evidence which he was not aware of.  So there was no deficient performance.

Moreover, even if you are entitled to a PSI and even if there was some other evidence that could have been introduced I find that Mr. Sheffield based on the scoresheet would have absolutely been deficient had he forced the issue and moved the sentencing or had the sentencing continued.  If the sentencing had been continued under the scoresheet and based on the record before this Court the scoresheet was inaccurate. The score should have shown a much higher lower permissible sentence. So it would not have inured to your benefit.  If anything the scoresheet could have been higher than 120 months you were given.  You scored almost seven years which would have been 72 months, almost seven years to Life.  And you got 10 years with the second count to run concurrent.  If anything the record shows that Judge Hood gave you a lower end of the range sentence.  I find specifically the time would have in no way benefitted you.  To the contrary it would have harmed you.  So again there was no deficient performance.  There was no prejudice.  The only prejudice that would have resulted would have been if Mr. Sheffield had done what you wanted him to do, which was to drag – or what you now say you wanted him to do – which was to continue the sentencing.

Doc. 26 Ex. J at 62-63.  The judge corrected his math in calculating the possible sentence, realizing that 72 months is six years instead of seven years as he stated, but indicated his analysis remained the same.  *Id*. at 64.  In the written order, the judge denied the Rule 3.850 motion for the reasons stated on the record.  *Id*. Ex. I at 27.

Assuming Meyers properly exhausted this claim, the state courts' rulings are entitled to deference and review is limited to the record before the state court.  *See* Cullen, 131 S.Ct. at 1388.  As with the other two grounds, the testimony of Frank Sheffield, found credible by the state post-conviction trial court, supports the state courts' determinations regarding this claim.  In particular, Mr. Sheffield testified that, after the trial ended, the judge went straight to sentencing.  Doc. 26 Ex. J at 21. Mr. Sheffield further testified regarding Petitioner's criminal history, that Petitioner never

told him about his bipolar condition or diabetes, and that Petitioner actually benefitted

by not having a PSI and going straight to sentencing, because the prosecutor did not

have copies of all of his prior convictions, so Petitioner had a lower permissible

guidelines sentence:

> Q Now, the defendant now makes a claim of ineffectiveness for failing to investigate and present mitigating evidence, namely failing to request a PSI and failing to discover and present evidence that the defendant was bi-polar and had diabetes and that he had been diagnosed with both of those conditions and I'm guessing that they somehow had a serious effect on him and his behavior and mental stability at the time.  1) let's start first with the PSI.  The defendant had an extensive history of being convicted of felonies, is that correct?
>
> A He did.
>
> Q And the defendant didn't – admitted that he had a pretty bad history, is that correct?
>
> A Yes.
>
> Q So you're familiar that you don't need to order a PSI if somebody's been previously convicted of a felony?
>
> A We discussed that on the record and based on the fact that he had a prior conviction he wasn't entitled to a PSI.
>
> Q Okay.  So that issue was raised?  It was considered and it was (inaudible).
>
> A It was discussed by Mr. Webster and myself and Judge Hood.  And there was a determination made by Judge Hood that he was not going to order a PSI and that we were going to proceed to sentencing.
>
> Q And that began on page 150 of the trial transcript, is that correct?
>
> A Right.  If you look at line 12 Judge Hood says I think the bailiff told me the defendant Myers [sic] has a prior felony.  And I said yes, sir.  And Mr. Webster said I found one prior, Your Honor, for bank larceny in 1977.  The Court said, do we need a PSI, here on line 20 and I stared and I don't [sic] and then Mr. Webster said I don't believe so, Your Honor.  I don't

think he qualifies if he has a prior conviction and we know that he's got at least the one that they have the certified records of. And they did have the certified records of that one prior conviction.

Q And on page 152 about half way down the page I guess beginning on line 15, Mr. Webster goes over the history of Mr. Myers [sic], is that correct?

A Right. He talks about beginning 1969 that he had an armed robbery from Cook County, Illinois, and agg battery in '71, armed robbery in '75, a bank robbery in '75 that he was acquitted, bank theft in '76, bank robbery in '77 and he got five years in prison, fraud, breach of trust in '82, a robbery in '87, a theft in '94 and an aggravated robbery in 1994. He just didn't have the certified copies of those convictions but he didn't need but one.

Q Now the issue of the bi-polar and diabetes, did Mr. Myers [sic] ever inform you of any of that as a possibility to use as mitigation?

A He did not. At the stages that we were preparing the case he maintained his innocence. He didn't offer any excuse of being bi-polar or diabetic as an excuse for him committing the crime because the two were 180 degrees apart. You can't say I didn't commit the crime, but if I did, I did it because I was bi-polar. So he never told me about that and here we are at sentencing and the judge asked him questions and he says I maintain my innocence here. This is the first time in my criminal career that I've been innocent. And he again doesn't say I did this because I'm bi-polar or because I'm diabetic or what have you. So he had the opportunity to raise it then and he didn't raise it then.

Q That was page 153 of the transcript, is that correct?

A Correct.

. . . .

Q Now under the prior record, even though Mr. Webster referred to all those crimes the defendant admitted in the record that he was guilty of and maintained his innocence on this one. But admitted he was guilty of those others with the exception of when he was acquitted. They weren't scored on this scoresheet were they?

A They were not. The one that he had the certified copy of was scored. And well, no, I take that back. It wasn't even scored. He scored the

current charges.  It looks like he scored the current robbery charge and the secondary charge of agg. battery.

Q Okay.  So if you'll look to the second page of the scoresheet.

A He scores from 69 months lowest permissible sentence to Life in prison.

Q And 120 was the total sentencing points, is that correct?

A Correct.  If you look in the transcript Judge Hood specifically made a comment on the record, I don't think this is a Life case.  And Mr. Webster argued for substantially more time.  I wanted bottom of the guidelines and he got pretty close to the bottom of the guidelines.

. . . .

Q Now were you ever informed or do you recall on the aggravated robbery in '94 what the resulting sentence was that Mr. Myers [sic] had received?

A I was told Mr. Myers [sic] had received five years.  But now as to seeing something to verify it I never saw anything to verify it.

Q Assuming that he was in fact sentenced to five years on the aggravated robbery and all these other offenses could have been counted on the scoresheet is that correct?

A Yes, sir.

Q And that sentence and I guess just based upon your experience without seeing the numbers that it would have – the bottom of the guidelines based upon the number of robberies that he had would have increased [his] score well beyond, the bottom of the scoresheet well beyond 120 months, is that correct?

A I think that he got a very generous guideline scoresheet because had all that other information been figured in and quite honestly we didn't have to sentence him that day we could have deferred sentencing and Mr. Webster could have gotten copies of his other convictions and it would have substantially raised his exposure beyond 120 months.  But by going ahead and sentencing him that day and using this criminal punishment scoresheet he got the benefit of the fact that none of those priors were added in.

Q And part of the PSI is to look at those priors and try to locate them and verify priors, is that correct?

A That's correct.  When you get a PSI they will go back and all of those prior cases will appear in the PSI and hence they will appear on the scoresheet.

Q And I think as you pointed out as well given more time it would have given the State itself more opportunity to locate the disposition in any prison sentences he may have served even if they would have been out of state.

A Mr. Webster knew about them.  He just didn't have the paperwork on them.

. . . .

Q Did Mr. Myers [sic] ever request you after the sentencing took place to file a motion to mitigate sentence?

A No.

*Id*. at 21-28.  *See id.* Ex. B at 150-55 (transcript of discussion about need for PSI, determination to proceed directly to sentencing, and sentencing proceeding).

The record thus supports the post-conviction trial court judge's determination that Meyers had shown neither deficient performance nor prejudice.  Nothing indicates the state courts' adjudication of this claim resulted in a decision that was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d).  This ground should be denied.

## Conclusion

Based on the foregoing, Petitioner is not entitled to federal habeas relief.

Accordingly, the § 2254 petition (Doc. 1) should be denied.  Petitioner's pending

motions (Docs. 48 and 49) should be denied as moot.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States

District Courts provides that "[t]he district court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant," and if a certificate is

issued "the court must state the specific issue or issues that satisfy the showing

required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal

must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional

right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000)

(explaining substantial showing) (citation omitted).  Therefore, the Court should deny a

certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the

court may direct the parties to submit arguments on whether a certificate should issue."

The parties shall make any argument as to whether a certificate should issue by

objections to this report and recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P.

24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify

appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (Doc. 1).  To the extent Petitioner has filed a motion to expedite, the Court should also **DENY** that motion (Doc. 49), as well as the motion for clarification (Doc. 48), as both are now moot.  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.  The Clerk shall substitute Michael D. Crews for Kenneth S. Tucker as Respondent.

**IN CHAMBERS** at Tallahassee, Florida, on September 23, 2013.


S/  Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**